UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————

In re:                                                    :     Chapter 11
                                                          :
PEGGY NESTOR,                                             :     Case No. 23-10627 (MEW)
                                                          :
                                    Debtor.               :
                                                          :
———————————————————————     :
                                                          :
ALBERT TOGUT, Not Individually But Solely in              :
His Capacity as Chapter 11 Trustee,                       :
                                                          :
                                    Plaintiff,            :
                                                          :
            v.                                            :     Adv. Pro. No. 24-01342 (MEW)
                                                          :
PEGGY NESTOR and                                          :
MARIANNE NESTOR CASSINI,                                  :
                                                          :
                                    Defendants.           :
                                                          :
———————————————————————

**DECISION AND ORDER DENYING ORAL MOTIONS TO
RECONSIDER PRIOR RULINGS REGARDING THE POSSESSION
OF A TOWNHOUSE AND THE SALE OF THE SAME**

On April 25, 2023, Peggy Nestor (the "Debtor") filed a voluntary chapter 11 petition commencing this bankruptcy case. On March 13, 2024, the Court rendered a decision granting the motion of certain creditors to appoint a chapter 11 trustee (the "Trustee Decision"). ECF No. 106.[1] An order to that effect was entered that same date. ECF No. 107. On March 22, 2024, the United States Trustee selected Albert Togut, Esq. as the chapter 11 trustee (the "Trustee"), ECF No. 111, and by order entered that same date, the Court approved the appointment. ECF No. 112.

———

[1] Citations to the docket in the main bankruptcy case are to "ECF No. ___." Citations to the docket in the adversary proceeding are to "AP ECF No. __."

The Debtor's primary asset is a townhouse located at 15 East 63rd Street, New York NY 10065 (the "Townhouse"). The recorded deed states that the Debtor and her sister, Marianne Nestor Cassini, are co-owners of the Townhouse. However, throughout the proceedings before this Court (at least until recently) the Debtor and her sister have contended that Marianne Nestor Cassini transferred her ownership share in the Townhouse to Peggy Nestor in an unrecorded deed in 2016.

Peggy Nestor agreed, in December 2023, that the Townhouse would be sold. One of the problems that led to the appointment of a Trustee was that the Debtor had failed properly to account for certain assets of the estate or to explain certain expenditures that the Debtor had made. Another problem was that the sale process was not proceeding in accordance with the agreed schedule. My order appointing a Trustee therefore stated as follows:

> The sale of the Townhouse also has not been proceeding in accordance with the schedule that I approved in December. It is in the interest of creditors generally that an independent third party be put in charge of this estate and take over primary responsibility for the sale of the Townhouse, the management of the Debtor's assets, the approval of expenditures, the conduct of settlement discussions, and the confirmation of a plan. The Debtor will have the right to object if she does not like what the trustee proposes, but she will no longer be in charge.

Trustee Decision, at 9-10.

On April 10, 2024, the Trustee filed the above-captioned adversary proceeding against the Debtor and against Marianne Nestor Cassini. The Trustee stated that he had been advised that the Debtor resided in Connecticut and not at the Townhouse,[2] and that Marianne Nestor

---

[2]   The Debtor's Amended Statement of Financial Affairs also states that the Debtor purchased real property located at 21 Point Road in Norwalk, Connecticut in or about 2021, and that the Debtor transferred that property to a limited liability company named "Butterbly [sic] Beach Home LLC," which was described as an "LLC with family." ECF No. 38. The bank statements submitted with the Debtor's monthly operating reports show many ATM transactions and other expenditures in Norwalk, Connecticut.

2

Cassini "never resided at the Townhouse." Complaint, AP ECF No. 1, ¶¶ 11, 28. The Trustee further alleged that the Debtor and Marianne Nestor Cassini had refused to provide the Trustee with access to or possession of the Townhouse in violation of the Trustee's rights and duties under the Bankruptcy Code. On that same day, I issued an Order to Show Cause that directed the defendants to show cause at a hearing on April 23, 2024, as to why an Order should not be entered directing the defendants to surrender and turn over possession of the Townhouse to the Trustee. AP ECF No. 3. The Trustee filed proof of service of the order. AP ECF No. 5.

Certain creditors of the Debtor and of Marianne Nestor Cassini filed reservations of their own claims and rights in response to the Order to Show Cause, but neither the Debtor nor Marianne Nestor Cassini filed papers. The Debtor's counsel of record appeared by telephone at the hearing, but she reported at that time that she had attempted to communicate with the Debtor and had been unable to get a response despite concerted efforts. *See* Transcript, AP ECF No. 10, at 8:10-24. Counsel reported that she had spoken with Marianne Nestor Cassini but that Ms. Nestor Cassini had not stated that she opposed the Trustee's request for relief. *Id* at 8:18-9:2.

After the April 23, 2024 hearing I entered an order compelling the Debtor and Marianne Nestor Cassini to provide access to the Townhouse to persons designated by the Trustee. AP ECF No. 8. The April 23, 2024 Order also directed that the Debtor and Marianne Nestor Cassini turn over to the Trustee a set of keys for complete access to the Townhouse within forty-eight (48) hours after entry of the Order. I also authorized the Trustee to employ a locksmith to change the locks, and to change the alarm codes for the Townhouse. *Id.* Finally, my April 23, 2024 Order stated that the Townhouse was to be in the sole custody and control of the Trustee and that the Trustee, if it turned out to be necessary, was authorized to use the assistance of the

3

U.S. Marshals' Service to facilitate the Trustee's entry into the Townhouse "and to remove any occupants found there." *Id.*

The Trustee filed proof of service of the April 23, 2024 Order upon the defendants. AP ECF No. 9. Defendants did not turn over keys to the Trustee within the 48-hour period that I had specified in my Order. The Trustee attempted to gain access to the Townhouse on April 26, but was denied access.

Marianne Nestor Cassini sent numerous emails to Chambers and left voice-mail messages with Chambers on Friday, April 26 and on Monday, April 29, but she was informed that *ex parte* communications were not allowed and that if she had a request for relief it needed to be filed with the Court Clerk with notice to other parties. On April 29, 2024, the Clerk of this Court received letters from Peggy Nestor and Marianne Nestor Cassini that were dated April 27, 2024 and a letter on behalf of Gemeaux Ltd. dated April 29, 2024, each of which asked for a "stay" in order to permit them to obtain counsel (or, in the case of the Debtor, to permit the Debtor to replace her existing counsel with a new attorney). ECF Nos. 130-132. The requests did not identify any particular act or proceeding for which the applicants sought a stay. Although it appears from the official docket that the requests were received by the Court Clerk on April 29, they were not entered on the Court's electronic docket until the morning of April 30, 2024. Prior to that time, however, the Trustee had returned to the Townhouse with a number of members of the U.S. Marshals Service, who forced their way into the Townhouse and who evicted Peggy Nestor, Marianne Nestor Cassini and their niece from the Townhouse.

I held a conference on May 1, 2024 to address the requests that Peggy Nestor and Marianne Nestor Cassini had filed. I entered an order that denied the stay motions on May 2, 2024 for the reasons I stated on the record on May 1, 2024 and that are summarized more fully

4

below. ECF No. 144. At a conference on May 8, 2024, Marianne Nestor Cassini and Peggy Nestor asked that I reconsider my rulings, though they offered no new arguments or evidence that would warrant a reconsideration. They have indicated that they intend to appeal, and so for the benefit of any reviewing court we have set forth the relevant background in this Decision and Order.

## Background

Marianne Nestor Cassini is the former wife of Oleg Cassini. Ms. Nestor Cassini has been embroiled in long-running disputes with other heirs of Mr. Cassini that have resulted in the entry of numerous orders and judgments in the Surrogate's Court and that continue to be the subject of proceedings in the Surrogate's Court. ECF No. 58. In 2014, the Surrogate's Court removed Marianne Nestor Cassini as executor of Mr. Cassini's estate and appointed the Nassau County Public Administrator as successor trustee. Later, the Surrogate's Court appointed a receiver (the "Receiver") to take control of certain corporate operations and assets. Significant battles continued as to whether particular companies and assets were properties of the decedent's estate, and on two different occasions Marianne Nestor Cassini was arrested and jailed for refusals to comply with court orders.

Two mortgage liens have been filed against the Townhouse. The junior mortgage creditor, Lynx Asset Management ("Lynx"), obtained a judgment of foreclosure from the New York State Court. This bankruptcy case was filed just prior to the scheduled foreclosure sale, and had the effect of automatically staying the continuation of the foreclosure proceedings.

The Public Administrator and the court-appointed Receiver also contend that they have enforceable security interests to the extent of any ownership interest in the Townhouse that belongs to Marianne Nestor Cassini. More particularly, the Public Administrator has recorded a

judgment lien against Marianne Nestor Cassini's interests in the Townhouse based on a judgment in the amount of $1,041,336 that was entered in 2015. In addition, in 2020 the Surrogate's Court issued an attachment order that applies to up to $57 million of any interests that Marianne Nestor Cassini and/or Gemeaux Ltd. hold in the Townhouse.

The Debtor claimed in her petition and in supporting papers that she is the sole owner of the Townhouse. *See* Declaration of Debtor Pursuant to Local Bankruptcy Rule 1007-2. ECF No. 2, at ¶ 3. The Public Administrator and other parties sought confirmation that the automatic stay did not interfere with their continuation of proceedings against Marianne Nestor Cassini or with the enforcement of rights as against her, but the Court was informed by the Debtor's counsel that Marianne Nestor Cassini had agreed that the Debtor was the sole owner of the Townhouse. I entered an Order that permitted the Surrogate's Court to decide a then-pending motion to dismiss in a turnover proceeding, but I held in abeyance the issue of whether (and to what extent) the Receiver's claims against Marianne Nestor Cassini should be severed from his claims against Peggy Nestor. ECF No. 45.

The Debtor initially indicated a desire to refinance the debts that were outstanding and contended that a tentative financing commitment had been reached, but the Debtor was never able to complete such a financing. Lynx moved for relief from the automatic stay, but it appeared that the property had significant value in excess of the debts owed to Lynx and to the senior mortgage lender. I therefore denied motions for relief from the automatic stay, but I made clear to the Debtor and her counsel that I was not going to hold Lynx at bay unless there were an agreed refinancing or sale process. The parties then agreed in late 2023 that the Townhouse would be sold, and they agreed on the procedures that would govern the sale. I approved the

retention of Sotheby's International Realty as a real estate broker and I approved the parties' agreed sale procedures on December 15, 2023. ECF Nos. 77, 78.

One issue that could have adversely affected the ability to sell the Townhouse was the potential uncertainty as to who owned it. The Debtor therefore commenced an adversary proceeding (Adv. Pro. No. 23-01195) against Marianne Nestor, the Public Administrator and the Receiver, seeking a declaration that the Townhouse belongs only to Peggy Nestor and that Marianne Nestor Cassini has no ownership interest in it. In the alternative, Peggy Nestor asked for an order declaring that the Townhouse could be sold pursuant to section 363(h) of the Bankruptcy Code, which permits the sale of property that is jointly owned by a debtor and another person so long as certain conditions are satisfied.

The Public Administrator and the Receiver filed answers in which they reserved their rights to claim that the Townhouse belonged in whole or in part to Marianne Nestor Cassini, and in which they reserved their own claims. However, Marianne Nestor Cassini did not oppose the requested relief. Instead, on January 31, 2024 she filed an admission of service of the Summons and Complaint, and stated that "I acknowledge that I have no ownership interest in the premises at 15 East 63th [sic] Street, New York . NY. 10065. Peggy Nestor is the Sole Owner of 15 East 63rd Street." AP No. 23-01195, ECF No. 10, at ¶ 8 (punctuation as in original). Ms. Nestor Cassini also signed the engagement letter with Sotheby's, and when she did so she added a note stating "all rights reserved. Nothing herein is an admission of any ownership interest. Peggy Nestor is the owner of 15 E. 63rd Street." ECF No. 80.

Thereafter, Peggy Nestor asked for the entry of a partial judgment against Marianne Nestor Cassini, which was not opposed by Ms. Nestor Cassini or by any other party. At a hearing on March 5, 2024, all parties agreed that the Court should approve the sale of the

7

Townhouse pursuant to section 363(h), with the understanding that the creditors' issues as to whether Marianne Nestor Cassini owns an interest in the Townhouse would be resolved in connection with the allocation of the proceeds of any sale. Accordingly this Court entered an Order granting a partial judgment against Marianne Nestor Cassini on March 13, 2024, confirming that the Townhouse would "be sold pursuant to the sale procedure previously approved by this Court" and directing that the proceeds of sale would be distributed to secured creditors and other parties "in accordance with their respective rights and interests, as such rights and interests are determined by the Court in the course of further proceedings in this adversary proceeding and in the underlying chapter 11 case". AP No. 23-01195, ECF No. 18.

A motion by Lynx for the appointment of a chapter 11 trustee also was scheduled for hearing on March 5, 2024. Marianne Nestor Cassini appeared at that hearing and filed papers shortly after the hearing stating her belief that the requested relief should not be granted. In her filing, Ms. Nestor Cassini stated that "Oleg Cassini, my husband since 1971, has had no Ownership Interest in the town house at 15 East 63rd Street NYC 10065. It is the residence and sole property of Peggy Nestor." ECF No. 104, at ¶ 38. Ms. Nestor Cassini also stated that "15 East 63rd Street has been Peggy's Home and Primary Residence for 40 years. I have never resided there. The building is 100% owned by Peggy since 2018, by Deed." *Id*. at ¶ 64.

One of the issues that Lynx had raised in its motion for the appointment of a Trustee related to the Debtor's receipt of approximately $225,000 in August 2023 pursuant to an insurance claim that had not been listed as an asset on the Debtor's schedules of assets. The Debtor provided inconsistent explanations of a $51,000 payment from those proceeds. At one point the Debtor contended that she had made the payment to Marianne Nestor Cassini for "product development" purposes. In a subsequent filing the Debtor stated that the funds were to

8

be used in support of a venture called "Tabletop Fashion by Marianne Cassini." ECF No. 91. At the March 5 hearing, however, Marianne Nestor Cassini contended that all monies that she had received had been used to repay a secured lender. I directed the Debtor's counsel, on March 5, to obtain the bank records showing who had directed the $51,000 transfer and to whom the money had been transferred. The Debtor's counsel subsequently reported, on March 12, 2024, that the documentation was unclear as to who had authorized the $51,000 withdrawal and that the Debtor herself "has neither confirmed nor denied that she authorized the withdrawal." ECF No. 105. The bank records showed that $20,000 had been used to purchase a cashier's check payable to Colleen Johnson (who was identified as a graphic artist who was assisting with a book relating to Oleg Cassini) and that the other $31,000 had been used to purchase a cashier's check payable to Marianne Nestor. *Id*.

I appointed a Trustee for the reasons stated in the Trustee Decision. As noted above, I entered subsequent orders to assist the Trustee in the conduct of his statutory duties, and that ultimately led to the eviction of the Debtor, Marianne Nestor Cassini and their niece from the Townhouse.

### The May 1 Conference

As noted above, I held a conference on May 1, 2024 to consider the three stay requests that had been made. On April 30, 2024, in advance of that conference, the Trustee filed a status report and an objection to the requests for a stay. ECF 135. The status report stated the following:

> 24. On April 26, 2024, members of the Togut Firm visited the Townhouse and requested a voluntary surrender of possession consistent with the Turnover Order, but the unnamed occupant of the Townhouse who answered the intercom system there refused to turn over possession.

9

      25. At approximately 8:30 a.m. on April 30, 2024, the Trustee's attorneys, with the assistance of U.S. Marshals Service, took possession of the Townhouse on behalf of the Trustee. To carry out the Court's order, the U.S. Marshals Service removed persons from the Townhouse: Peggy Nestor; Marianne Nestor; and Conner Alexandra Nestor Castellano, purportedly the Debtor's niece.

      26. The Trustee is now in possession and control of the Townhouse. Consistent with the Turnover Order, Sotheby's has been provided with keys to the Townhouse to take the necessary steps for a sale. Until today, Sotheby's was completely frustrated and prevented from doing its work.

*Id*. at ¶¶ 24-26.

At the May 1, 2024 hearing, the Trustee's counsel repeated the description of the events set forth in the status report. The Debtor and Marianne Nestor Cassini each denied having received copies of the Court's prior Orders or being aware of them, but the Court noted that the Trustee had filed proofs of service, and further noted that Marianne Nestor Cassini had left voice messages and had sent emails making clear that she was aware of the orders. The stay requests also showed an awareness of the orders.

It was not clear to the Court just what relief the parties sought pursuant to their stay requests. Ms. Nestor Cassini contended, for the first time in these proceedings, that she actually is a one-half owner of the Townhouse and that the Trustee should not be permitted to take possession of her property. I informed her that she was estopped from making that contention because she had previously stated expressly, in pleadings and other papers filed in this Court, that she had no ownership interest in the Townhouse and that sole ownership resided with Peggy Nestor. Ms. Nestor Cassini denied having made such statements, but the Trustee's counsel read the relevant passage from her response to the adversary proceeding complaint into the record, and the Court takes judicial notice of it.

10

This case has been pending for more than a year. Lynx was on the verge of foreclosure when the case was filed. I denied Lynx's motion for stay relief, first to give the Debtor an opportunity to complete a refinancing for which there purportedly was a tentative commitment, and then to permit a sale to be completed through a bankruptcy process on terms to which all the parties agreed. The agreed sale procedures are expected to produce a better outcome than a foreclosure sale likely would provide. Peggy Nestor and Marianne Nestor Cassini both prefer that a sale occur with the assistance of Sotheby's, and pursuant to the agreed procedures, rather than through a foreclosure process. However, the success of a sale (and my willingness to deny stay relief) depended on the ability to give assurance to potential buyers that they would get good title through a bankruptcy sale. The assurances that Marianne Nestor Cassini had no ownership interest in the property – which she later confirmed in her official response to the adversary proceeding that was filed – was an important factor in my denial of the motions for relief from the automatic stay and in my approval of the agreed sale process.

In addition, the Public Administrator and the Receiver are the beneficiaries of attachment orders and a judgment lien that apply to any interest that Marianne Nestor Cassini has in the Townhouse. I limited the stay relief that I granted to those parties because of the contentions by Peggy Nestor and Marianne Nestor Cassini that Peggy Nestor is the sole owner of the Townhouse. The Public Administrator and the Receiver (like Lynx) eventually agreed to a bankruptcy sale process rather than the pursuit of their rights in state court actions. The bankruptcy sale process is expected to produce better recoveries than might otherwise be achieved. Once again, however, Peggy Nestor's insistence that Marianne Nestor Cassini has no ownership interest in the Townhouse and her assurances that Marianna Nestor Cassini did not contend otherwise, and Marianne Nestor Cassini's official confirmation of that position and her

11

agreement that the property could be sold through the bankruptcy proceedings, were important factors in my limitation of the relief granted to the Public Administrator and the Receiver, and in the agreement by those parties to the conduct of a sale pursuant to the sale procedures that I approved.

Judicial estoppel applies to prevent a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *New Hampshire v Maine*, 532 US 742, 749 (2001). The doctrine is applied to protect the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id*. at 750. In addition to securing my approval of the sale process, as described above, it appears to the Court that Marianne Nestor Cassini also held her own creditors at bay by her denials of an ownership interest of the Townhouse. Having officially and consistently taken the position that she does not own any interest in the Townhouse, and having secured relief on that basis, she cannot now take an opposite position. *Madeira v United Talmudical Academy of Kiryas Joel*, 351 F. Supp. 2d 162, 164 (S.D.N.Y. 2004) (other citations omitted).

The Debtor and her sister also asked that I put them back in charge of the sale process. I denied that request, for the reason (among others) that the conduct of the sale is now the Trustee's statutory responsibility. They complained about the appointment of the Trustee, but my findings on those issues were stated in the Trustee Decision, and no appeal from my Order appointing the Trustee was filed. Finally, they asked that I postpone the sale process while they attempted to arrange a refinancing, but I noted that they had already attempted (and failed) at arranging a refinancing, and that is the reason they had previously agreed to the sale of the Townhouse. I explained that while I would not stay the sale process the Debtor and her sister

remained free to try to arrange a refinancing and, if they were successful in identifying an interested lender, to discuss refinancing proposals with the Trustee and the secured creditors.

I also stated that the Debtor, Marianne Nestor Cassini, and a niece who was present at the time the Trustee took control of the Townhouse, could by arrangement with the Trustee get access to remove personal items, but only with the supervision of the Trustee and the presence of U.S. Marshals.

The Trustee stated on May 1 that although the Debtor's bankruptcy petition had listed ownership of only two pieces of artwork, there were many more in the Townhouse. The Debtor contended that that she only owned two pieces and that others belonged to Marianne and to another sister. I stated that no artwork was to be removed until the Trustee could determine whether it belonged to the Debtor and to the bankruptcy estate.

### The May 8 Conference

On May 8, 2024, at a pretrial conference, Marianne Nestor Cassini first said that an attorney that was going to appear could not because the Trustee had served him with a subpoena in the case. The Court commented that it did not see how the service of the subpoena would prevent the attorney from appearing at the hearing. The Trustee's counsel noted that subpoena was to obtain the deed that the Debtor had previously referred to and that had assigned Marianne Nestor Cassini's interest in the Townhouse to the Debtor.

Peggy Nestor and Marianne Nestor Cassini then reiterated the arguments that the Court had already ruled on at the May 1, 2024 status conference. The Court again held that Ms. Nestor Cassini is estopped from contending that the sale proceedings should be held in abeyance, or that the Trustee's control of the Townhouse should be nullified, by virtue of her alleged ownership of one-half of the Townhouse, because she had explicitly denied having any such ownership

interest. In fact, she had also explicitly represented to the Court (as describe above) that she did not reside in the Townhouse, and that she had never done so. She also complained about the forcible eviction, but the Court noted that it was her own fault that matters had culminated in the eviction, because she and her sister had refused to cooperate with the Trustee and had refused to obey this Court's orders regarding the turnover of the property.

Marianne Nestor Cassini then orally asked the Court to reconsider its rulings as to possession of the Townhouse and as to her ownership interest. The Court said that it would not reconsider those rulings because Ms. Nestor Cassini was trying to reverse course on what she had previously said, and the Court was not going to allow her to do it. Ms. Nestor Cassini also asked for permission to enter the Townhouse without supervision in order to remove property that she believes is hers, but the Court stated that she could only enter with the supervision of the Trustee and the U.S. Marshals. While I continue to expect that the Trustee will agree to the removal of clothing, medications and clearly personal effects, no party is permitted to remove property from the Townhouse without the consent of the Trustee.

Finally, the Court made clear to Marianne Nestor Cassini once again that she and Gemeaux Ltd. had always been free, at any time to retain counsel. There is a pending motion for the Debtor's counsel of record to withdraw, but if that withdrawal is approved the Debtor is also free to retain new counsel. I encouraged all parties to appear through counsel, and I repeat that encouragement here.

Based on the foregoing, it is hereby

**ORDERED**, that the oral motion for reconsideration of my prior rulings is denied, and it is further

**ORDERED**, that the Trustee shall remain in control and possession of the Townhouse and in control of the sale process that is underway.

DATED: New York, New York
       May 13, 2024

                                         /s/ **Michael E. Wiles**
                                         UNITED STATES BANKRUPTCY JUDGE